IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  ) | |
| Plaintiff,  ) | CR No.   22-CR-01520-002 JB |
| )  vs.  )  ) | |
| **ADELENE URQUIJO,**  )  ) | |
| Defendant.  ) | |

### UNITED STATES' SENTENCING MEMORANDUM

### PROCEDURAL HISTORY

On August 7, 2024, Defendant pled guilty to Count 9 of the Superseding Indictment, charging her with violation of 18 U.S.C. § 3, that being accessory after the fact related to the interference with commerce by attempted robbery in Count 7. Doc. 90. She did so pursuant to a plea agreement where the United States agreed to dismiss Count 7, as to her, and the parties agreed that a specific sentence of 60 months imprisonment is the appropriate disposition of this case *Id.* at 5.

A Presentence Investigation Report (PSR) was prepared and disclosed on September 23, 2024. Doc. 94. The United States has no objections to the PSR and agrees that the facts, as outlined in the PSR under the Offense Conduct, sufficiently describe the nature of this offense. PSR ¶¶ 9-27. Additionally, the government concurs that the PSR otherwise correctly calculated the total offense level (20) and criminal history category (III). PSR ¶ 87. The applicable guideline range is 30-37 months. *Id.*

1

For the reasons stated herein, the United States requests the Court accept the c1C agreement of the parties and impose a term of imprisonment of 60 months, followed by a term of three years supervised release.

## ARGUMENT

The Court should apply *United States v Booker*, 543 U.S. 220 (2005), and *Rita v. United States*, 127 S.Ct. 2456 (2007), to arrive at a reasonable sentence for the defendant. In doing so, the Court must consider the sentencing factors set forth in 18 U.S.C. § 3553(A). These factors support the Government's request.

1. The Nature and Circumstances of the Offense

The facts and circumstances of this case are tragic and support the above-guideline c1C. On August 16, 2022, Defendant drove a stolen vehicle around Espanola, New Mexico, accompanied by Ricky Martinez. Doc. 90 at 4. The full scope of Defendant's knowledge is unclear, but Martinez was a suspect in several armed robberies, even at that time. PSR ¶¶ 10-14. Defendant dropped Martinez off at the nearby Blakes Lotaburger, where Martinez went in and attempted to rob John Doe 2. Martinez pulled out a .380 revolver, jumped over the counter, and told John Doe 2 "give me the fucking money." PSR ¶ 15. When his robbery attempt failed, he shot and killed John Doe 2. *Id.* He was then confronted by John Doe 3, the brother of John Doe 2, who was pistol whipped and shot at by Martinez for coming to the aid of his brother. PSR ¶¶ 15-17, 30. Defendant heard the gunshots while she waited nearby in the stolen vehicle. Doc. 90 at 4.

Following this heinous and violent attempted robbery, Martinez ran right back to the vehicle Defendant was driving and told her "go, go, go". *Id.* Defendant drove Martinez away

2

from the scene of the murder and took him to her own home. *Id.* Martinez admitted to Defendant that he attempted to rob the Blakes, he shot someone, and that he had committed other robberies for "easy money". *Id.* at 4-5. Yet she still assisted him to avoid detection. Defendant called Ashley Thompson to pick up Martinez from Defendant's trailer. *Id.* at 5. Defendant provided extensive assistance to Martinez to avoid law enforcement, including giving him a change of clothes and assisting Thompson with vehicle issues so Thompson could take Martinez to Santa Fe in the trunk of her car. *Id.*

Defendant's knowledge of the shots fired, when she drove Martinez from the scene of the murder, and her continued assistance in the face of Martinez' admission to a string of robberies is unconscionable behavior. The nature and circumstances of the offense in this case are not adequately captured by the guidelines, in part due to the very limited cap on the base offense level. *See* PSR ¶ 37 (limiting the base offense level to 20, when it would otherwise be 37). Thus, the nature and circumstances of the offense support the above-guideline c1C agreement.

2. <u>History and Characteristics of the Defendant</u>

Defendant's criminal record is also telling. PSR ¶¶ 49-61. While her arrest record began later in life, at age 28, from 2015 to 2022 she was arrested in ten different felony cases. *Id.* Two of those cases resulted in convictions, one for forgery, convicted in 2016, and the other for tampering with evidence, convicted in 2017. PSR ¶¶ 49-50. In the first conviction, Defendant was granted the opportunity to earn a conditional discharge, but she had her probation revoked on two occasions for failing to comply with conditions and was ultimately sentenced to 18 months in custody. PSR ¶ 49. Based on the overlap of her convictions, it appears she committed new crimes while on this prior term of supervision. PSR ¶¶ 49-50. Since her release from

3

supervision, Defendant amassed five felony arrests, including several arrests for stolen vehicles consistent with her conduct in this case. Her criminal history is consistent, concerning, and previous sentences have been insufficient to curb her criminal activity. This type of criminal record demonstrates the need for lengthy incarceration to accomplish the goals of sentencing and provides support for the proposed sentence.

3. <u>The Need for the Sentence Imposed to Promote Respect for the Law, Provide Just Punishment, Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant</u>

The sentence agreed-upon sentence is one that is necessary to provide just punishment and to protect the public. The parties' agreement to an upward variance takes into account the Defendant's personal history mentioned in the PSR, while also taking into account the seriousness of the offense and her recent criminal history. Furthermore, it would promote respect for the law and deter future crimes, as it demonstrates there are serious punishments for any person who provides assistance to violent criminals. Defendant has demonstrated, through her conduct, that she presents a danger to the community outside of custody and she is not deterred by or compliant with supervision alone. A 60-month sentence will ensure a meaningful period of incarceration for an individual who has demonstrated a willingness to violate the law by assisting a murderer and armed robber. It will further promote respect for the law by acknowledging Defendant's aggravating conduct related to this offense. Given Defendant's actions in this case, her criminal history, and her personal history, a sentence of 60 months incarceration, followed by a period of supervised release, would serve to best address the goals of sentencing.

CONCLUSION

WHEREFORE, the United States respectfully requests that this Court accept the agreement of the parties and sentence Defendant to a term of 60 months imprisonment.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

 /s/ *Timothy D. Trembley*
TIMOTHY D. TREMBLEY
Assistant United States Attorney
201 3rd St. NW
Albuquerque, NM 87102
(505) 346-7274

I hereby certify that on November 4, 2024,
I filed the foregoing using CM/ECF
Which caused the following counsel to
be served by electronic means, as more fully reflected
on the Notice of Electronic filing:

> Joachim Marjon
> Attorney for Defendant
> joachim@marjonlaw.org

 /s/
Timothy Trembley
Assistant United States Attorney

5